BERLIN, (MILLER v.) See Case No. 9,562.

---

## Case No. 1,344.

### The BERMUDA.

[10 Ben. 693.] [1]

District Court, E. D. New York. Dec. Term, 1879. [2]

COLLISION IN NORTH RIVER—STEAMSHIP AND LIGHTER—CROSSING COURSES.

1. Where a steam-lighter, bound from Hoboken, N. J., around the Battery to the East river, and a steamship, which had come round the Battery into the North river and was making for her berth at pier 10, against the tide, came in collision, whereby the lighter was sunk, and her owner libelled the steamship, alleging various faults of navigation: *Held*, that only one of the faults charged, that of porting her helm, could have interfered with an effort on the part of the lighter to avoid the steamship;

[See note at end of case.]

2. That the steamship did not port her helm, but kept her course, as she was bound to do under rule 18, and having stopped and backed when danger appeared, and let go her anchor, was not in fault for the collision;

[See note at end of case.]

3. That the lighter, having attempted to cross the bows of the steamship, was in fault, and the libel must be dismissed.

[See note at end of case.]

[In admiralty. Libel against the steamship Bermuda for damages from collision. Dismissed. Libellant subsequently appealed. Affirmed. The Bermuda, 11 Fed. 913.]

Owen & Gray, for libellant.

Butler, Stillman & Hubbard, for claimant.

BENEDICT, District Judge. This action is brought to recover the sum of $10,000, being the damages arising from a collision between the steam-lighter Nichols and the steamship Bermuda in the North river, on the 7th day of December, 1878. The libel avers that the place of the collision was a little below pier 1; that the tide was strong ebb and the wind S. W.; that the lighter was bound from Hoboken to Newtown creek; that the steamship, when first seen by those on the lighter, was heading up the North river, and if she had kept the course she was then on or had put her helm to star-

---

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

[2] [Affirmed by the circuit court in The Bermuda, 11 Fed. 913.]

board she would have passed the lighter on her starboard hand in perfect safety; that, as soon as the steamship was discovered, two signals of the lighter's whistle were sounded as a warning to the steamship that the lighter intended to pass the steamship on her starboard hand; that instead of answering the signal the steamship paid no attention thereto, but put her helm to port, and by so doing threw herself toward the course which the lighter was pursuing; that, upon receiving no response from the steamship, and immediately upon seeing her aforesaid change of course, the lighter's helm was put hard-a-starboard, her engine was stopped and backed and everything was done to avoid collision. Four faults on the part of the steamship are charged, viz: that she had no proper lookout; that she paid no attention to the signal of the lighter, but instead thereof put her helm to port; that she was going at too great a rate of speed in a crowded harbor; and that she did not stop and back.

The account of the accident given by the steamship in her answer, is that the steamship having rounded the Battery at half speed, was proceeding slowly against the strong ebb-tide to her berth at pier 10 in the North river; that the steam lighter was observed on the port bow of the steamship, distant therefrom twelve or fifteen hundred feet, coming down the river on a course that involved no risk of collision; that a large double-decked barge was passing down the river between the lighter and the steamship, and in passing, shut off the lighter from the view of those on the steamship for a short time; that when the lighter again came in view, by the stern of the barge, being then about five hundred feet distant, and about three points on the port bow of the steamship, she was heading almost directly for the steamship, indicating, thereby, that she had swung off her course under a starboard helm; that, although signalled from the steamship by a single blast of her whistle, to pass down on the port side of the steamship, she paid no attention thereto, but continued to swing as though under a starboard helm, taking a course crossing the bows of the steamship, whereupon, the steamship at once backed her engines at full speed, and it being impossible to get sternway in so short a distance, the port anchor was let go, but the lighter, still under a starboard helm, came down upon the bows of the steamship, and thus caused the damage complained of. Various faults are charged by the steamer upon the lighter as the cause of the collision: (1), her departure from the course she was on when first discovered by the steamship and adopting a course crossing the bows of the steamship; (2), her failure to have a proper lookout; (3), her failure to heed the signal of the steamship, but continuing in spite thereof under a starboard helm; (4), her proceeding

at too great a rate of speed; (5), her not stopping and backing; (6), not taking the necessary precautions to avoid collision with the steamship.

In regard to these pleadings it is to be remarked that the libel is vague and unsatisfactory. It gives no courses, and the facts are so stated as to leave it uncertain what rule of navigation was applicable to the respective vessels. It would seem from the libel that the vessels were on courses substantially parallel, the lighter coming down the river between the steamship and the New York shore, and that the collision was caused by a porting of the helm of the steamship, which threw her towards the course which the lighter was pursuing. But no such case is shown by the evidence. The case for which the libellant contends upon the evidence is that the two vessels were on crossing courses. "The lighter (it is said) was crossing the river, and when discovered by the steamship, had reached the intersecting point of the courses."

Assuming that the evidence will permit the libellant to claim that the lighter was upon a course crossing the course of the steamship, instead of being substantially parallel to that of the steamship and outside of her, it cannot be denied that in such case it was the duty of the lighter to keep out of the way of the steamship, inasmuch as she had the steamship upon her starboard side and was subject to sailing rule 18, (old article 14.) In order to recover, therefore, upon the case as it is claimed to be by the libellant, it must appear that the lighter was prevented from avoiding the steamship by some fault committed by the steamship which rendered it impossible for the lighter to keep out of her way.

Of the faults charged in the libel against the steamship, but one, viz: that of porting her helm, could, under the circumstances claimed by the libellant, interfere with the effort of the lighter to avoid the steamship. It was no fault in the steamship not to starboard her helm, for her duty, under such circumstances, was to keep her course, and when it became evident that the lighter would fail in her effort to cross ahead of the steamship, stop her way as much as possible. As to a porting of the helm, no witness is called who testifies that the helm of the steamship was ported. Every witness from the steamship who speaks on the subject, including the man at the wheel of the steamship, says that the helm was not ported, and there is no testimony sufficient to controvert the statement. It is quite likely that after the engine of the steamship had been reversed, the bow of the steamship swung somewhat to east, but that arose from the action of the screw and was no fault. As regards stopping, it is proved that the steamship made every effort to stop her way as soon as it became evident that the lighter was likely to fail in

her effort to cross the bows of the steamship. Upon the proofs, therefore, it is impossible to hold that the collision was caused by a fault of the steamship. The fault that caused the collision was that of the lighter in attempting to cross the bows of the steamship instead of passing under her stern.

The libel must therefore be dismissed, and with costs.

[NOTE. On libellant's appeal this judgment was affirmed by the circuit court on substantially the same grounds. In reference to the contention that the Bermuda should have starboarded her helm, the court, by Blatchford, Circuit Judge, remarked that it was not clear that that would have avoided the collision, but, even "if it would, the failure to adopt the maneuver was, at most, an error of judgment, in the peril caused by the negligent action of the O. T. Nichols, and not a fault." The Bermuda, 11 Fed. 913.]